# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 17-6009

_____

In re: Martin J. Tirrell

*Debtor*

------------------------------

Charles Gabus Motors, Inc., d/b/a Toyota of Des Moines

*Plaintiff - Appellee*

v.

Martin J. Tirrell

*Defendant - Appellant*

_____

Appeal from the United States Bankruptcy Court
for the Southern District of Iowa - Des Moines

_____

Submitted: July 28, 2017
Filed: September 6, 2017

_____

Before SALADINO, Chief Judge, SCHERMER and NAIL, Bankruptcy Judges.

_____

NAIL, Bankruptcy Judge.

Martin J. Tirrell ("Debtor") appeals the January 31, 2017 judgment of the bankruptcy court[1] denying Debtor a discharge of his debts. We affirm.

BACKGROUND

Charles Gabus Motors, Inc. ("Gabus Motors") filed an adversary complaint asking the bankruptcy court to determine the dischargeability of its claim against Debtor and to deny Debtor a discharge in his chapter 7 case. Shortly before the scheduled trial, Debtor and Gabus Motors entered into a settlement agreement, pursuant to which Debtor was to pay Gabus Motors $45,000.00 in five installments, the first of which was due by January 3, 2017. The parties agreed if Debtor made these payments, Gabus Motors would dismiss the adversary proceeding. The parties further agreed if Debtor failed to make these payments, Gabus Motors could file an affidavit of default and ask the bankruptcy court to enter an order denying Debtor a discharge. The bankruptcy court approved the parties' settlement agreement.

Debtor failed to make the first payment, and Gabus Motors filed the requisite affidavit of default. Debtor objected, claiming he was prevented from making the payment by circumstances beyond his control, and asked the bankruptcy court to order Gabus Motors to accept late payment.

The matter came before the bankruptcy court. At the hearing, Debtor claimed enforcing the default provision of the parties' settlement agreement would also violate

---

[1]The Honorable Lee M. Jackwig, United States Bankruptcy Judge for the Southern District of Iowa.

IOWA CODE § 554.2718.[2]  The bankruptcy court overruled Debtor's objection and directed the entry of a judgment denying Debtor a discharge.  Judgment was entered, and Debtor timely appealed.[3]

## STANDARD OF REVIEW

We review for clear error the bankruptcy court's findings of fact.  *Islamov v. Ungar* (*In re Ungar*), 633 F.3d 675, 679 (8th Cir. 2011).  We review *de novo* the bankruptcy court's conclusions of law.  *Id.*

## DISCUSSION

Debtor's principal argument is the bankruptcy court erred in not temporarily excusing him from making the January 3, 2017 payment under the parties' settlement agreement.  In support of this argument, Debtor points us to Iowa common law that recognizes both the doctrine of impracticability and the doctrine of temporary impracticability, as described in the Restatement (Second) of Contracts.[4]

---

[2]That section provides, in pertinent part:  "A term [in an agreement] fixing unreasonably large liquidated damages is void as a penalty." IOWA CODE § 554.2718 (2017).

[3]On the same day he filed his notice of appeal, Debtor also filed a motion under Fed.R.Bankr.P. 7052 for additional findings, which the bankruptcy court denied. Debtor did not file a separate notice of appeal or an amended notice of appeal regarding the bankruptcy court's order denying his motion. Consequently, he may not challenge that order.  Fed.R.Bankr.P. 8002(b)(3).

[4]Both parties appear to presume Iowa contract law guided the bankruptcy court's interpretation of their settlement agreement.  Without deciding the issue, we have done likewise.

The doctrine of impracticability applies

> [w]here, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 261 (Am. Law. Inst. 1981). As its name suggests, the doctrine of temporary impracticability extends the doctrine of impracticability to situations where the impracticability is only temporary:

> Impracticability of performance or frustration of purpose that is only temporary suspends the obligor's duty to perform while the impracticability or frustration exists but does not discharge his duty or prevent it from arising unless his performance after the cessation of the impracticability or frustration would be materially more burdensome than had there been no impracticability or frustration.

Restatement (Second) of Contracts § 269 (Am. Law. Inst. 1981).

The sum and substance of the record before the bankruptcy court regarding this issue may be gleaned from Debtor's affidavit in support of his objection to Gabus Motors' affidavit of default. According to Debtor, on December 30, 2016, he left the state to obtain the funds necessary to make the January 3, 2017 payment. On January 3, 2017, he flew from Tampa to Chicago, where he arrived at 9:06 a.m. Due to weather, his connecting flight, which was scheduled to land in Des Moines at 1:23 p.m., was cancelled, and he was not able to fly out of Chicago until January 4,

2017. And he was prepared to deliver the January 3, 2017 payment to Gabus Motors on January 4, 2017.[5]

Debtor argues the weather conditions on January 3, 2017 were beyond his control and the bankruptcy court should therefore have temporarily excused him from making the January 3, 2017 payment. If one focuses only on Debtor's description of the events of January 3, 2017, this is a permissible view of the record.

The bankruptcy court, however, looked beyond the events of January 3, 2017 and found Debtor's attempt to justify his failure to make the January 3, 2017 payment lacking. Debtor did not explain to the bankruptcy court's satisfaction why, when the bankruptcy court had approved the parties' settlement agreement on December 20, 2016, he waited until the last minute to obtain the funds necessary to make the January 3, 2017 payment. Debtor likewise did not explain to the bankruptcy court's satisfaction why, if he did not have the financial wherewithal to make the January 3, 2017 payment when he signed the settlement agreement on November 29, 2016, he unconditionally committed himself to do so. Finally, Debtor did not explain to the bankruptcy court's satisfaction why he could not have anticipated–and allowed for–inclement weather in the Midwest at the beginning of January.

Given these circumstances, the bankruptcy court chose to place the blame for Debtor's failure to make the January 3, 2017 payment on Debtor and his procrastination between November 29, 2016 and January 3, 2017, not the weather on January 3, 2017. This is also a permissible view of the record. That being so, we cannot say the bankruptcy court's finding was clearly erroneous. *Anderson v. City of Bessemer City, North Carolina*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

---

[5]Debtor offered no evidence to corroborate his affidavit.

Debtor also argues the parties' settlement agreement is subject to the provisions of article 2 of Iowa's uniform commercial code.[6] While Debtor did not expressly raise this issue in the bankruptcy court, by claiming enforcing the settlement agreement's default provision would violate IOWA CODE § 554.2718 (2017) (one of the provisions of article 2 of Iowa's uniform commercial code), he did at least raise it by implication. This argument, however, fails.

Article 2 of Iowa's uniform commercial code "applies to transactions in goods[.]" IOWA CODE § 554.2102 (2017). Goods are generally described as "all things . . . which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities[,] . . . and things in action." IOWA CODE § 554.2105(1) (2017) (in pertinent part). This definition cannot be stretched to encompass the parties' settlement agreement, which does not involve either "things . . . which are movable" or a "contract for sale." Consequently, the parties' settlement agreement is not subject to article 2 of Iowa's uniform commercial code.

Debtor also argues the settlement agreement's default provision is a liquidated damages clause that is void as a penalty under IOWA CODE § 554.2718. The bankruptcy court did not expressly reject this argument. However, by overruling Debtor's objection, it did do so implicitly. *See Fonder v. United States*, 974 F.2d 996, 999-1000 (8th Cir. 1992) ("Oral findings and conclusions . . . must be liberally construed and found to be in consonance with the judgment if the judgment has support in the record evidence.") (internal quotation marks and citation omitted). This argument also fails.

---

[6]Debtor's argument focuses on the parties' original contract, which is not before us. Debtor does not explain why we should look to that contract to determine whether the parties' agreement to settle the adversary proceeding is subject to these provisions. In any event, we decline to do so.

As previously noted, the parties' settlement agreement is not subject to article 2 of Iowa's uniform commercial code. And even if it were, the settlement agreement's default provision is not a liquidated damages clause. As Debtor himself points out in his reply brief (citing *Black's Law Dictionary* 391 (6th ed. 1990) and incorporating its definition of "liquidated damages"), a liquidated damages clause is one in which "a specific sum of money has been expressly stipulated by the parties to a . . . contract as the amount of damages to be recovered by either party for a breach of the agreement by the other." This definition cannot be stretched to encompass the settlement agreement's default provision, which does not set forth a "specific sum of money," does not address "damages," and does not provide for "recover[y] by either party."

Debtor raises a number of other issues for the first time on appeal: Whether Debtor's failure to make the January 3, 2017 payment was a material breach of the parties' settlement agreement; whether the settlement agreement's default provision is a liquidated damages clause that is void as a penalty under Iowa common law;[7] and whether Gabus Motors failed to tender substitute performance[8] under IOWA CODE §§ 554.2614 (2017) (substituted performance) and 554.2615 (2017) (excuse by failure of presupposed conditions). Because Debtor did not raise these issues before the bankruptcy court, we have not considered them on appeal. *Edwards v. Edmondson* (*In re Edwards*), 446 B.R. 276, 280 (B.A.P. 8th Cir. 2011) (discussion and citations therein), *aff'd*, 477 F. App'x 405 (8th Cir. 2012).

---

[7]As discussed above, Debtor did raise the related issue of whether the default provision is a liquidated damages clause that is void as a penalty under IOWA CODE § 554.2718 in the bankruptcy court.

[8]Presumably, Debtor meant to say Gabus Motors failed to *accept* substitute performance.

CONCLUSION

Having reviewed for clear error the bankruptcy court's finding that Debtor and his procrastination, not the weather, were to blame for Debtor's failure to make the January 3, 2017 payment under the parties' settlement agreement and having reviewed *de novo* the bankruptcy court's implicit conclusion that the settlement agreement's default provision was not a liquidated damages clause that was void as a penalty under IOWA CODE § 554.2718, we affirm the bankruptcy court's judgment denying Debtor a discharge.

---